IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIM. NO. 23-238 |
| TYLEEYA WILLIAMS | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Michelle Rotella, Assistant United States Attorney for the District, hereby moves this Honorable Court to detain the defendant prior to trial because there are no conditions or combination of conditions that can reasonably assure the safety of the community or mitigate the risk of flight.

The defendant comes before this Court accused of sexually abusing an infant child in her care, recording her sexual abuse, and then distributing out her images over the Internet to other child sex offenders. She now faces significant and certain incarceration: a statutory maximum of 90 years' imprisonment, a mandatory minimum of 15 years' imprisonment, Guidelines of life imprisonment, and numerous other financial and reporting penalties upon conviction. For all of these reasons, and the reasons outlined below, the defendant is unable to rebut the statutory presumption that no combination of conditions will assure her appearance for trial or the safety of the community, and she should be detained pending trial in this matter.

**A.    FACTS**

In support of this motion, the Government makes the following representations and proposed findings of fact:

1

Probable cause has already been established through the indictment issued by the federal grand jury which charges defendant Tyleeya Williams with manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251 (Count One), distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts Two and Three), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Four). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

The evidence in this case is strong. On February 9, 2023, one of the defendant's family members contacted the Philadelphia Police Department (PPD) to report that child pornography had been found on the defendant's iPhone. The family member advised that the defendant had been missing since the day before, February 8, 2023, and left her phone behind. The family accessed the defendant's iPhone to see if there was any information that would assist them in locating her, but instead found child pornography. The images were located with the Telegram application on the defendant's phone.[1] The defendant was engaged in an ongoing Telegram conversation with user "X GAMES," and when the family member reviewed this chat conversation she found videos of child pornography being traded, which she described as adult women with younger boys and adult men with younger girls performing oral sex and having vaginal sex.

---

[1] Telegram is a messaging application where users can have one-on-one private chats or group chats, and can share files, such as pictures, videos, or audio.

The family member was especially concerned when reading the defendant's chat, because she believed that the defendant was talking about her sexual abuse of an infant child[2] whom the defendant babysat on January 28, 2023. Excerpts from the chat with X GAMES on January 28, 2023 found on the defendant's phone:

> Defendant:   I can't wait to taste her when she gts ("gts" meaning goes to sleep).
>
> She has cameras……so since she has cameras I'm going to take her to the bathroom or upstairs.

The family member explained that she believed the defendant was talking about the family member's home because she has cameras inside her house, and when she left the child with the defendant on January 28th, the child was eating a bag of Cheetos, and the Telegram chat referenced Cheetos:

> X GAMES:   You both look sexy. Y'all making me want some Cheetos. I'm hard.

The family member was concerned that the defendant sent pictures of the child to "X GAMES" and brought the phone to police so that it could be examined.[3] On February 15, 2023 PPD obtained a search warrant for the defendant's iPhone, and then referred the case for potential federal prosecution. PPD provided Tyleeya Williams' iPhone to the FBI for the forensic

---

[2] The identities of the family members and the infant child are known to law enforcement but omitted from this public filing to protect the confidentiality of the investigation and to protect their identities. *See* 18 U.S.C. § 3509.

[3] The subsequent forensic review of the defendant's phone showed that she sent three images to X GAMES: one that showed the child in a diaper, one that showed her eating Cheetos, followed by a third photo of the child's naked vagina.

examination and review, which confirmed thousands of images of child pornography, including images and videos of the infant child that had been manufactured by the defendant.

Specifically, within the Telegram app on the phone agents located approximately 19 chats in which the defendant and other users discussed sexually abusing children and traded child pornography. Only one of the 19 was a group chat – the rest were private, one-on-one chats between the defendant and different Telegram users. These chats took place over almost seven months, from July 22, 2022 to February 9, 2023. In these chats, a total of 183 videos of child pornography (equivalent to 13,725 images) were traded by Tyleeya Williams and other Telegram users. **Of this total, the defendant distributed 33 videos herself (equivalent to 2,475 images) over a six-month period to multiple users.** The child pornography depicted prepubescent minor girls and boys engaged in sexually explicit conduct, to include oral and anal rape, masturbation, and genital to genital contact with other children or adults. Some of the videos depicted children as young as infants being sexually abused. The videos also included sadomasochistic abuse of the child victims, including bondage and blindfolding. Additionally, the exam uncovered numerous chats between the defendant and users who were minors, in which the defendant convinced the minors to send their own sexually explicit images to her.

Significantly, the exam uncovered the chat between the defendant and "X GAMES" in which the defendant talked about sexually abusing her young family member, as well as numerous images and videos of the child victim and the defendant. Some of these were non-pornographic. In her chats with X GAMES, the defendant distributed two non-pornographic images of the child – one of the child in her purple and white diaper, and one of the child eating Cheetos. The third image distributed depicted the child's vagina. She also distributed three sexually explicit videos: (1) one that zoomed in on the child's naked buttocks, while an adult

hand spread the child's legs and cheeks to expose her vagina; (2) another zoomed-in video that shows the child's naked vagina with an adult's fingers rubbing the child's vagina; and (3) another video that is zoomed in on the child's naked vagina with her legs spread, and an adult hand rubbing her vagina. The three videos were all taken within minutes, all in the child's bedroom. Just before the second video was taken, the defendant turned the camera around so that her own face was shown on the video in the child's bedroom.

FBI agents located Tyleeya Williams and arrested her on June 13, 2023. As part of her arrest she was advised of her Miranda rights as well as her ability to waive those rights. The defendant told agents that she understood her rights and wished to waive them and speak with agents. Her interview – and the advisement and waiver of her Miranda rights – was audiotaped. The defendant confessed to sexually abusing the infant in her care, videotaping and photographing her abuse, and then distributing the image and videos out over Telegram to another user. She told agents she used child pornography to relieve her stress.

B.   **MAXIMUM PENALTIES**

For all four charges, the defendant faces a total penalty of 90 years' incarceration with a mandatory minimum term of 15 years, a minimum 5 years up to a lifetime of supervised release, a $1,000,000 fine, mandatory restitution of at least $3,000 per victim, a $400 special assessment, and if found to be non-indigent, an additional, mandatory special assessment of $20,000 must be imposed, and up to $137,000 in additional special assessments pursuant to 18 U.S.C. § 2259A. She will also have to register as a sex offender pursuant to the Sex Offender Registration and Notification Act ("SORNA"). A preliminary calculation of her sentencing Guideline range shows that she faces Guidelines of life imprisonment.

C. **BACKGROUND OF DEFENDANT**

The defendant is currently homeless. The mental health facility where she had been living discharged her from the program and has advised that the nature of her charges prohibits her from any further participation in the program. Likewise, she is not permitted to reside in the home where she had been living at the time she committed these offenses, and the family advised the Government that she would not be permitted to reside with any other family member if she were to be released. She is unemployed, owns no real estate, and has no assets.

D. **LEGAL ARGUMENT**

Pursuant to 18 U.S.C. § 3142(e)(3)(E), there is a rebuttable presumption in favor of detention for individuals who, like this defendant, are charged with violating 18 U.S.C. §§ 2251 and 2252(a)(2). This presumption is based in part on the Congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes." *Comments of Chairman Lemar Smith*, H.R. Rep. 5422; *See also United States v. Farris*, 2008 WL 1944131 (W.D. Pa. 2008).

The dangers surrounding these types of offenses are widely recognized. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (emphasizing Department of Justice and Federal Bureau of Investigation statistics reflecting substantially increased likelihood of repeat arrests for sex offenders); *United States v. Pugh*, 515 F.3d 1179, 1199 (11th Cir.2008) (discussing influence of sexual offender recidivism in passage of various provisions in the PROTECT Act); *Report of Chairman Sensenbrenner*, H.R. Rep. 107-527, on amendment of 18 U.S.C. § 3583 (expressing congressional determination that "sex offenders and child molesters are four times more likely than other violent criminals to recommit their crimes" and referencing studies and findings documenting (1) a significantly higher rate of recidivism among sexual predators, (2) the number

of undetected offenses which such individuals actually commit and (3) the psychological impact such offenses have on the victims); *Doe v. Bredesen*, 507 F.3d 998, 1006 (6th Cir.2007) (noting the legislative findings in numerous states passing sex offender registration systems reflecting the "undisputed high risk of recidivism" by such sex offenders). A defendant may rebut the presumption of pretrial detention by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986). Even when the defendant has come forward with evidence sufficient to rebut the presumption, "the presumption does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Abad,* 350 F.3d 793, 797 (8th Cir.2003) (quoting *United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Chagra,* 850 F.Supp. 354, 358 (W.D.Pa.1994) (Diamond, J.) (the presumption once rebutted does not disappear, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to the factors listed in § 1342(g).")

Here, the defendant poses a clear danger to children in the community, and there is no condition or combination of conditions that could assure the safety of the community if she were to be released. There is simply no way to effectively monitor (or prevent) this defendant's access to children in general, and certainly not her online access to children or other sex offenders, for the following reasons:

(1) Access to the internet is possible through desktop and laptop computers, cell phones, iPods, iPads, and even gaming devices. There is no way to prevent the defendant from purchasing or using an Internet accessible device without the knowledge of Pretrial Services.

(2) Storage devices can range in size, down to the size of a postage stamp, making it impossible for a Pretrial Services officer to locate. There is no way to prevent the defendant from obtaining any storage medium, and no amount of supervision that would detect it in her home or elsewhere.

    (3)    There is no way to monitor whether the defendant will access the Internet – and child pornography – using a public library's computers, using other people's electronic equipment, or Internet access at any other location, given that there is free WiFi access from any number of public places.

    (4)    Even if this Court were to order that computer monitoring software be installed on the defendant's home computer(s), there would be no way to detect if she were to subvert the computer monitoring software by simply inserting a device with its own operating system into the computer being monitored, thereby bypassing the monitoring software altogether. The defendant's activities would be completely undetected, and the Pretrial Services officer – and this Court – would instead be issued a report that the defendant is in "compliance."

Indeed, it is difficult to conceive of any supervision that would detect the defendant's criminal activities. Pre-Trial Services is limited to inspection of items that are in plain view of the officers. Nor is Pretrial Services permitted to seize electronic evidence. "The ubiquitous presence of the internet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion." *United States v. Schenberger*, 498 F.Supp.2d 738, 745 (D. N.J. 2007) ("This Court is not persuaded that meaningful assurances can be given that defendant's access to the internet can be stopped. Even if the defendant could somehow be prohibited from viewing, or exchanging images of child pornography, it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities."); *see also United States v. Voelker*, 489 F.3d 139, 145 (3d Cir.2007) (recognizing the dangers associated with child pornography offenses and the difficulty to effectively monitor given the accessibility of the Internet).

The defendant poses a clear danger to any child in the community, and there is no condition or combination of conditions that could assure the safety of the community if she were

to be released. She victimized hundreds of children over the internet, but also preyed upon her own infant family member, for whom she was entrusted to care. She violated the trust of her own family through her vile acts of sexual abuse against the most vulnerable and innocent of victims. By choosing this child as her victim she has clearly demonstrated that there are no boundaries that she will not cross. Her abuse will live on in perpetuity because she chose to distribute the child's images – which also depict the child's face – over the internet to other child sex offenders. There is simply no way to ensure compliance with any conditions this Court may impose, or to eradicate the very clear danger she poses to every child in the community. Only a 24-hour watch provided by the Bureau of Prisons will ensure that the defendant does not endanger the public.

      Moreover, prison is a certainty for this defendant if convicted of these crimes– she faces a mandatory minimum of 15 years' imprisonment, a statutory maximum of 90 years, and a calculated Guideline range of life imprisonment. The anticipation of this severe sentence gives the defendant every incentive to flee, knowing that she will spend decades in prison if convicted, and makes her even more of a danger to children in the community, knowing that her release on bail may be the last time she is free in many years.

### E. **CONCLUSION**

For all of these reasons, the defendant cannot rebut the presumption under 18 U.S.C. § 3142(f)(1)(E) that no condition or combination of conditions will reasonably assure her presence for trial or the safety of the community.

WHEREFORE, the government respectfully requests the Court to detain this defendant prior to trial.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

*/s/ Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIM. NO. 23-238 |
| **TYLEEYA WILLIAMS** | : | |

**PRETRIAL DETENTION ORDER**

AND NOW, this 15th day of June, 2023, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e) and (f)(1)(E).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) and (f)(1)(E) because:

(a) Probable cause has already been established through the indictment issued by the federal grand jury which charges defendant Tyleeya Williams with manufacture and attempted manufacture of child pornography, in violation of 18 U.S.C. § 2251 (Count One), distribution and attempted distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts

1

Two and Three), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Four). As a result, there is a rebuttable presumption, pursuant to 18 U.S.C. § 3142(e)(3)(E), that no condition or combination of conditions will assure the safety of the community and the defendant's appearance in court.

    (b)    The evidence in this case is strong. On February 9, 2023, one of the defendant's family members contacted the Philadelphia Police Department (PPD) to report that child pornography had been found on the defendant's iPhone. The family member advised that the defendant had been missing since the day before, February 8, 2023, and left her phone behind. The family accessed the defendant's iPhone to see if there was any information that would assist them in locating her, but instead found child pornography, which she described as adult women with younger boys and adult men with younger girls performing oral sex and having vaginal sex. The family member was especially concerned when reading the defendant's chat, because she believed that the defendant was talking about her sexual abuse of an infant child[4] whom the defendant babysat on January 28, 2023.

    The Philadelphia Police Department obtained a search warrant for the defendant's iPhone, and then referred the case for potential federal prosecution and provided the phone to the FBI for forensic examination and review. The examination of the defendant's phone confirmed that it contained thousands of images of child pornography, including images and videos of the infant child that had been manufactured by the defendant. Specifically, within the Telegram app

---

[4] The identities of the family members and the infant child are known to law enforcement but omitted from this public filing to protect the confidentiality of the investigation and to protect their identities. *See* 18 U.S.C. § 3509.

2

on the phone agents located chats between the defendant and multiple other users which took place over almost seven months, from July 22, 2022 to February 9, 2023 and which contained approximately 13,725 images of child pornography that were traded. Of this total, the defendant distributed 2,475 images herself over a six-month period to multiple users. The child pornography depicted prepubescent minor girls and boys engaged in sexually explicit conduct, to include oral and anal rape, masturbation, and genital to genital contact with other children or adults. Some of the videos depicted children as young as infants being sexually abused. The videos also included sadomasochistic abuse of the child victims, including bondage and blindfolding. Additionally, the exam uncovered numerous chats between the defendant and users who were minors, in which the defendant convinced the minors to send their own sexually explicit images to her.

   Significantly, the exam uncovered the chat between the defendant and "X GAMES" in which the defendant talked about sexually abusing her young family member, as well as numerous images and videos of the child victim and the defendant. Some of these were non-pornographic. In her chats with X GAMES, the defendant distributed two non-pornographic images of the child – one of the child in her purple and white diaper, and one of the child eating Cheetos. The third image distributed depicted the child's vagina. She also distributed three sexually explicit videos: (1) one that zoomed in on the child's naked buttocks, while an adult hand spread the child's legs and cheeks to expose her vagina; (2) another zoomed-in video that shows the child's naked vagina with an adult's fingers rubbing the child's vagina; and (3) another video that is zoomed in on the child's naked vagina with her legs spread, and an adult hand rubbing her vagina. The three videos were all taken within minutes, all in the child's

bedroom. Just before the second video was taken, the defendant turned the camera around so that her own face was shown on the video in the child's bedroom.

On June 13, 2023, the defendant confessed to the charged offenses in an audiotaped interview with FBI agents after having been advised of and waiving her Miranda rights.

(c) If convicted of the charged offenses, she faces a total term of 90 years' imprisonment, 15 of which is mandatory, Guidelines of life imprisonment, and numerous other financial and reporting penalties. This significant and certain term of imprisonment provides ample incentive to flee and also increases the danger she poses to any child in the community.

(d) The nature of the defendant's crimes, and the difficulty in effectively monitoring child sex offenders whose crimes include use of the Internet, also increases her danger to any child in the community.

(e) The defendant currently is homeless and has no place to reside. The mental health facility where she had been residing has discharged her and prohibited her return; her family has advised that the defendant cannot reside in any of the family homes; and the defendant is unemployed and without means to secure a suitable living arrangement that would address the need to protect the community.

(f) The strength and nature of the case against the defendant, combined with the significant and certain prison sentence that must be imposed upon conviction, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the

defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE PAMELA CARLOS
United States Magistrate Court Judge

## CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served by e-filing and email on the following defense counsel:

Katrina Young, Assistant Federal Defender
Katrina_young@fd.org


*/s/ Michelle Rotella*
MICHELLE ROTELLA
Assistant United States Attorney

Date: June 14, 2023.